Filed 8/28/23  Marriage of Presti and Chu CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re the Marriage of MATTHEW PRESTI and JANEY CHU. | B309231, B317198 |
| MATTHEW PRESTI,<br><br>Appellant,<br><br>v.<br><br>JANEY CHU,<br><br>Respondent. | Los Angeles County<br>Super. Ct. No. 20PDFL00918 |

APPEALS from orders of the Superior Court of Los Angeles County.  Amy M. Pellman and Sarah J. Heidel, Judges.  Case No. B309231 is affirmed.  Case No. B317198 is reversed in part and remanded for further proceedings.

Law Offices of Lisa R. McCall, Lisa R. McCall and Erica M. Baca for Appellant.

James Karagianides; McAlarnen & Sun and Julie McAlarnen for Respondent.

_____

These are consolidated appeals from orders of the Los Angeles Superior Court in the parties' dissolution proceeding. At issue is whether the trial court erred in (1) denying appellant Matthew Presti's request for modification of a March 2019 stipulated child support order (case No. B309231); and (2) granting respondent Janey Chu's request for sanctions against Matthew and denying Matthew's request for sanctions against Janey (case No. B317198).[1] We answer the first issue in the negative because Matthew failed to timely raise below the grounds he now urges for reversal. As to the second issue, we conclude the court failed to properly exercise its discretion in awarding fees against Matthew because it relied on findings unsupported by the record and considered inappropriate factors, but we find no abuse of discretion in its denial of Matthew's request for sanctions against Janey.

We therefore affirm the trial court's denial of Matthew's request to modify the March 2019 order, reverse its sanctions order as against Matthew, and affirm its denial of Matthew's request for sanctions against Janey. We remand for reconsideration of Janey's request for sanctions subject to the limitations imposed by this opinion.

## BACKGROUND

Matthew and Janey wed in July 2009. In March 2011, they had a daughter, K.P. In January 2012, the couple separated. For the duration of their marriage, they lived in Orange County where Matthew held an information technology position with

---

[1] Despite their different surnames, we follow the parties' lead in referring to them by their first names.

Citigroup. Following their separation, Janey moved to Los Angeles County.

Court proceedings in Orange County followed. In November 2012 the Orange County Superior Court entered a status only dissolution judgment, reserving other issues for later resolution. In July 2013, it entered a judgment on child custody issues, which provided K.P. would spend the substantial majority of her time with Janey. In March 2015, the court entered a stipulated judgment on child support issues, which required Matthew to pay Janey child support of $1,123 per month. The judgment described this rate as "guideline"—a reference to the statewide uniform guideline for child support payment amounts adopted pursuant to Family Code[2] division 9, part 2, chapter 2, article 2. (§§ 4050–4105.)

Matthew lost his job at Citigroup in September 2017. A few months later, in June 2018, he moved to Los Angeles County, near where Janey and K.P. lived.

With the parties living closer together, they agreed to revisit their custody and support arrangements. In March 2019, they stipulated to an order whereby K.P. would stay with each parent approximately half the time and neither would pay the other child support.

The March 2019 stipulation and order was prepared on an Orange County Superior Court form that made no mention of whether the "$0" support payment was above, below, or at the guideline amount. It did, however, contain the five statements section 4065, subdivision (a) makes mandatory for the court to

---

[2]     Undesignated statutory references are to the Family Code.

3

approve a below-guideline support stipulation.**3** Despite containing the statements required for a below-guideline support stipulation, Janey claims,**4** and Matthew does not dispute, that the Orange County Superior Court entered the March 2019 order without making the findings it would have been required to make under section 4056 to issue a child support order that was below guideline.**5**

---

**3** Section 4065 provides, in relevant part, that "the parties may stipulate to a child support amount subject to approval of the court. However, the court shall not approve a stipulated agreement for child support below the guideline formula amount unless the parties declare all of the following: [¶] (1) They are fully informed of their rights concerning child support. [¶] (2) The order is being agreed to without coercion or duress. [¶] (3) The agreement is in the best interests of the children involved. [¶] (4) The needs of the children will be adequately met by the stipulated amount. [¶] (5) The right to support has not been assigned to the county . . . and no public assistance application is pending." (*Id.*, subd. (a).)

**4** Janey's claim is not supported by proper citation to the record. For the proposition, she cites a brief she filed with the trial court. "A trial brief is not evidence, it is argument." (*In re Marriage of Pasco* (2019) 42 Cal.App.5th 585, 591 (*Pasco*).)

**5** Section 4056 provides, in relevant part, that "the court shall state, in writing or on the record, the following information whenever the court is ordering an amount for support that differs from the statewide uniform guideline formula amount under this article: [¶] (1) The amount of support that would have been ordered under the guideline formula. [¶] (2) The reasons the amount of support ordered differs from the guideline formula amount. [¶] (3) The reasons the amount of support ordered is consistent with the best interests of the children." (*Id.*, subd. (a).)

4

### 1. Matthew's Efforts to Modify the March 2019 Order

Just a few months after agreeing to the March 2019 child support order, Matthew decided he wanted child support payments from Janey. In August 2019, he filed a request for modification with the Los Angeles Child Support Services Department. A few months later, the Los Angeles Child Support Services Department advised Matthew it was unable to assist him because the parties' dissolution proceeding was still pending in Orange County. Matthew then filed a request to modify the March 2019 child support order in Orange County Superior Court, but failed to properly serve Janey, thereby delaying its hearing. Before the Orange County Superior Court was able to hear the matter, Janey moved to transfer venue to Los Angeles County. The Orange County Superior Court granted Janey's motion. Following the transfer, in July 2020, Matthew renewed his request for modification in the Los Angeles Superior Court.

Matthew's request stated he sought "[child] support [payments] within guidelines." He did not assert that the March 2019 order was below guideline when entered. This is important because, as discussed further below, a party seeking to modify a child support order ordinarily must show circumstances have changed since the previous order. But section 4065, subdivision (d) does *not* require a party to show changed circumstances to request modification of a below-guideline child support order.

Instead of asserting he did not have to show changed circumstances, Matthew supported his request with a discussion of his circumstances. He explained he had been laid off from his job at Citigroup in 2017; that he had thereafter moved to Los Angeles; and that since moving to Los Angeles the parties had

5

agreed to split time with K.P. equally.  He continued that, since obtaining equal time with K.P., he had been "aggressively looking for [jobs]" but "having a difficult time finding employment."  The job market in Los Angeles proved weaker for his skillset than the market in Orange County.  This brought Matthew "to the realization that the cost of living [in Los Angeles] is much more expensive than it is in Orange County and [he] [wa]s burning through [his] savings quickly as a result."

Janey opposed Matthew's request.  She argued that, to obtain a modification of the March 2019 order, Matthew was required, but failed, to show a material change in his circumstances.  Circumstances had not changed because, when Matthew and Janey entered into the March 2019 stipulation, Matthew was already unemployed, had already moved to Los Angeles, and had already obtained a 50-50 timeshare of physical responsibility for K.P.

The trial court, Judge Amy Pellman presiding, heard Matthew's modification request in August 2020.  At the hearing, the court pressed Matthew, who was representing himself, to articulate changed circumstances.  Matthew expressed "concern[] that we're even questioning the fact there's no change in circumstance," but never took the position that no such showing was required under section 4065, subdivision (d).  Janey's counsel argued there was no evidence the March 2019 stipulated order was below guideline, and further asserted it was "presumptively a guideline support" because it was, according to Janey, unaccompanied by findings that the court is required to make under section 4056, subdivision (a) to support below-guideline orders.  The court was receptive to this argument, calling the "point that this was a guideline support . . . well taken."  It

6

denied Matthew's request for modification. It explained on the record that Matthew failed to demonstrate changed circumstances. The minute order that followed stated, "The Court finds that there is a lack of change in circumstances."

Several months later, the trial court entered formal findings that echoed the minute order: "The Court finds that [Matthew] did not meet his burden of proof to show any change of circumstances warranting a modification of the March 13, 2019 Order." The court did not address whether the March 2019 order was either guideline or below guideline.

## 2. Matthew's Request to Vacate

Two weeks after the hearing on his modification motion, Matthew filed a notice of intention to move to vacate pursuant to Code of Civil Procedure section 663. For the first time, he asserted the March 2019 support order was below guideline, and he invoked section 4065, subdivision (d) to excuse a showing of changed circumstances. When he filed his motion to vacate, Matthew also filed a request that it be heard before November 18, 2020. This date was significant, he explained, because it was the statutory deadline for the court to decide his motion to vacate under Code of Civil Procedure section 663a, subdivision (b). The trial court granted Matthew's scheduling request, setting the hearing for October 22, 2020.

Janey opposed Matthew's motion to vacate on multiple grounds. These included that Matthew could not raise the benefit of section 4065, subdivision (d) on a motion to vacate because he had not established in the modification proceeding that the March 2019 order was below guideline.

At the October 22, 2020 hearing, the trial court (Judge Pellman again presiding) considered Matthew's arguments and

expressed an inclination to "revisit" denial of Matthew's request to modify the March 2019 order. The court felt a full hearing was the "fairest" way to address his points, but Janey's counsel steadfastly argued such a hearing was pointless under Code of Civil Procedure section 663 given the lack of evidence the March 2019 order was below guideline. Despite agreeing with Janey's counsel that "that's actually true under the 663," the court stated: "What I can . . . do, if parties don't agree, is set the matter for a hearing on – [sic] and vacate." The court then offered a hearing date of February 8, 2021, which counsel for both parties accepted. Shortly thereafter, Janey's counsel asked, "what exactly is set for hearing on February 8?" The court responded "[w]e'll do it in accordance with 663." Janey's counsel expressed understanding, and the hearing ended.

Counsel for Matthew did not share Janey's counsel's understanding. She prepared a form of order stating that the motion to vacate had been granted and sent that to Janey's counsel on November 6, 2020. Janey's counsel responded 10 days later that she disagreed the trial court had vacated its denial of Matthew's request for modification, arguing the hearing had merely been continued. Matthew's counsel then filed an ex parte motion to clarify on November 19, 2020, advising that if the motion to vacate had not been granted on October 22, it had been denied by operation of law on November 18, and Matthew would need to promptly appeal denial of his modification request. The court denied the motion for clarification, stating it had not decided Matthew's motion to vacate and reiterating that the matter would go forward on February 8, 2021.

8

Matthew filed a notice of appeal of the denial of his request for modification on November 20, 2020.[6]

The trial court, Judge Sarah Heidel presiding, held a hearing on Matthew's motion to vacate in February 2021. It denied the motion as untimely because the statutory period to consider it under section 663a had expired.

3.    **Janey's Request for Sanctions and Matthew's Cross-request**

In September 2021, pursuant to section 271, Janey filed a request for sanctions against Matthew of $134,860.07 for conduct dating back to 2012. The request recited that "$75,587.62 represents the fees and costs [Janey] incurred in connection with [Matthew's] custody litigation [from 2012] through 2018. The remaining $59,272.45 represents the fees and costs [Janey] has incurred since 2019 . . . ."

Matthew opposed Janey's request and made a cross-request for sanctions against Janey in the amount of $20,000. Among other things, Matthew argued Janey could not recover for conduct before March 2019 because, by stipulations dated October 2016 and March 2019, the parties had agreed to waive the right to recover attorney fees for the periods 2012 through 2016 and 2018 through 2019.

The trial court (Judge Heidel again presiding) heard the sanctions matters in October 2021. For reasons detailed later in this opinion, the court granted Janey's request in the amount of $38,092.70 and denied Matthew's request.

---

[6]    Matthew's notice of appeal also referred to the trial court's October 22, 2020 order. He does not argue grounds for reversal of this order so his appeal from that order is waived.

9

Matthew timely appealed this order.  We consolidated that appeal with the earlier appeal of the denial of his request for modification on November 20, 2020.

## DISCUSSION

### 1.  Modification

#### a.  Appealability

Janey notes Matthew appealed from the trial court's August 20, 2020 minute order stating his request for modification was denied, but not its subsequent December 2020 findings and order further memorializing that decision.  Janey asserts that this "rais[es] a question as to whether his first notice of appeal was premature."  Janey does not attempt to answer this "question" or suggest we should not consider Matthew's appeal of the denial of his request for modification.

We have discretion to treat a notice of appeal filed after the superior court has announced its intended ruling, but before it has rendered an appealable order, as filed immediately after the entry of the appealable order.  (Cal. Rules of Court, rule 8.104(d)(2), (e).)  To the extent Matthew's first notice of appeal may have been premature, we exercise that discretion and treat the notice as filed upon entry of the court's December 2020 findings and order.

#### b.  Standard of review

We review an order on a request for modification of child support for abuse of discretion.  (*In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 555.)  In this context, the trial court's exercise of discretion entails " ' "a duty to exercise an informed and considered discretion with respect to the [parent's child] support obligation," ' " and our deference is " tempered significantly by the state's uniform child support guideline . . . .

10

'[T]he trial court's discretion is not so broad that it "may ignore or contravene the purposes of the law regarding child support." ' " (*Ibid.*, citations omitted.)

### c.     Purposes of California's child support laws

" 'California has a strong public policy in favor of adequate child support. [Citations.] That policy is expressed in statutes embodying the statewide uniform child support guideline. [Citations.]' [Citation.] 'The guideline seeks to place the interests of children as the state's top priority.' [Citation.] In setting guideline support, courts are required to adhere to the principles set forth in section 4053, which include: (1) 'A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life'; (2) '[b]oth parents are mutually responsible for the support of their children'; (3) '[e]ach parent should pay for the support of the children according to his or her ability'; (4) '[c]hild support orders in cases in which both parents have high levels of responsibility for the children should reflect the increased costs of raising the children in two homes and should minimize significant disparities in the children's living standards in the two homes'; and (5) '[c]hildren should share in the standard of living of both parents. Child support may therefore appropriately improve the standard of living of the custodial household to improve the lives of the children.' " (*In re Marriage of Bodo* (2011) 198 Cal.App.4th 373, 385, fn. omitted (*Bodo*).)

### d.     Guideline support and stipulated exceptions

To implement these policies, courts are ordinarily required to set child support in accordance with the mathematical formula in section 4055. (*Bodo, supra*, 198 Cal.App.4th at p. 385.) This formula takes into account, among other things, the parents'

respective net incomes and their relative share of time having primary physical responsibility for the supported children. (See § 4055, subd. (b).) Support orders may deviate from the guideline only in limited circumstances, including, as relevant here, where the "parties have stipulated to a different amount of child support under subdivision (a) of Section 4065." (§ 4057, subd. (b)(1).)

When stipulating to a below-guideline support payment, the parties must make the declarations required by subdivision (a) of section 4065, recited in footnote 3, *ante*. And regardless of whether the stipulated amount is above or below guideline, a court considering any nonguideline stipulation must make the findings required by subdivision (a) of section 4056, recited in footnote 5, *ante*, including what the amount of the guideline payment would have been in the absence of the stipulation. (See § 4056, subd. (a)(1).) This is a "sua sponte obligation" the law imposes upon a court. (*In re Marriage of Laudeman* (2001) 92 Cal.App.4th 1009, 1014 (*Laudeman*).)

### e. Modification of stipulated support amounts

Section 3651 provides, in relevant part, that "a support order may be modified or terminated at any time as the court determines may be necessary." (*Id.*, subd. (a).) This is true "whether or not the support order is based upon an agreement between the parties." (*Id.*, subd. (e).)

Generally, a party seeking modification of a child support order bears the burden of introducing " 'admissible evidence of changed circumstances as a necessary predicate for modification.' " (*In re Marriage of Williams* (2007) 150 Cal.App.4th 1221, 1234.) A narrow exception to the changed circumstances requirement applies to requests for modification of below-guideline stipulated orders. (*Ibid.*) Where such a

12

stipulation has been made, "no change of circumstances need be demonstrated to obtain a modification of the child support order to the applicable guideline level or above." (§ 4065, subd. (d).) In such a scenario, therefore, the party seeking the modification to guideline need only show the prior stipulated order was below guideline. (See *In re Marriage of Hein* (2020) 52 Cal.App.5th 519, 536 [Evid. Code, § 500 rule imposing burden of proof on party to whose case fact is essential applies in proceedings under the Family Code].) This rule has been described as an unqualified right to " ' "renege" ' on [a below-guideline] stipulation at any time, and without ' "grounds." ' " (*Laudeman*, *supra*, 92 Cal.App.4th at p. 1015.)

Matthew cites two cases, *In re Marriage of Thomas* (1981) 120 Cal.App.3d 33 and *In re Marriage of Catalano* (1988) 204 Cal.App.3d 543, for the proposition that a prior stipulation may be modified based on a showing of current circumstances alone. A similar argument based on these same authorities was rejected in *In re Marriage of Cohen* (2016) 3 Cal.App.5th 1014, 1023–1025 and we reject it for the same reasons. As to *Catalano*, a change of circumstances was actually found, rendering the point on which Matthew relies dicta. (*Cohen*, at pp. 1023–1024, citing *Catalano*, at p. 549.) As to *Thomas*, this summary opinion was not well supported by authority and, if more closely considered, would have required the party seeking modification to at least show proof of prior circumstances in order to obtain modification. (*Cohen*, at p. 1025.) In any event, *Thomas* described the authority to consider modification based on current circumstances alone as discretionary. (*Thomas*, at p. 35.) Thus, that the *Thomas* trial court did not abuse its discretion in modifying without changed circumstances does not compel the

13

conclusion that the trial court here abused its discretion in declining to modify in the absence of changed circumstances.

### f. The trial court did not abuse its discretion in rejecting Matthew's modification request.

Matthew requested modification of the stipulated March 2019 $0 support order based on a changed circumstances theory. He asserted that, since the date of the stipulation, his cost of living was higher than he expected it to be, he was not having the success he had hoped in finding a new job, and, as a result, he was burning through his savings. For whatever reason, he failed in his August 2019 request to claim the benefit of section 4065, subdivision (d). As Janey explains, "he did not even attempt to carry" the burden of showing the 2019 stipulated order was below guideline. The trial court denied Matthew's request for failure to "meet his burden of proof to show any change of circumstances warranting a modification of the March 13, 2019 order."

### i. The trial court did not err in finding no changed circumstances.

On appeal, Matthew does not argue he demonstrated changed circumstances to the trial court, assuming they were required. For completeness, we agree with Janey that the court did not abuse its discretion in denying Matthew's request for modification for failure to show changed circumstances. When Matthew and Janey entered into the March 2019 stipulation, Matthew was already unemployed, had already moved to Los Angeles, and had already obtained a 50-50 timeshare of physical responsibility for K.P. The only change in circumstances Matthew identified were the disappointment of his expectations, the passage of time, and its attendant effect on his savings. It

14

was well within the trial court's discretion to conclude these changes were inadequate to support his request to modify the March 2019 order.

### ii. Matthew forfeited his argument that section 4065, subdivision (d) excused a showing of changed circumstances.

Matthew argues the trial court should not have required a showing of changed circumstances because the March 2019 order was not guideline. We agree with Janey that the applicability of the section 4065, subdivision (d) exception is not properly before us.

" '[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court.' . . . Such arguments raised for the first time on appeal are generally deemed forfeited." (*Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591–592, citations omitted.) " ' " 'The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected.' " ' " (*People v. Gonzalez* (2020) 57 Cal.App.5th 960, 975.) "[I]t is unfair to the trial judge and the adverse party to take advantage of an alleged error on appeal where it could have easily been corrected in the trial court." (*Glassman v. Safeco Ins. Co. of America* (2023) 90 Cal.App.5th 1281, 1326.)

At the August 2020 hearing, Matthew failed to object on the grounds that section 4065, subdivision (d) excused him from proving changed circumstances. At best, he expressed "concern[] that we're even questioning the fact there's no change in circumstance." Matthew's apparent belief that it was undeniable his circumstances had changed would not have put the trial court on notice of his position that he did not have to prove changed

circumstances. Absent a clear invocation of a statutory right, we will not reverse for a trial court's failure to develop an appellant's theory for them. (Cf. *Planned Protective Servs. v. Gorton* (1988) 200 Cal.App.3d 1, 13 [declining to consider issue under doctrine of invited error where the appellant failed to raise claimed statutory right to trial court, rendering trial court "not informed about" the issue], disapproved on another ground in *Martin v. Szeto* (2004) 32 Cal.4th 445, 451, fn. 7.)

It is true that Matthew raised the section 4065, subdivision (d) exception to the trial court in his Code of Civil Procedure section 663 motion to vacate. However, this was inadequate to preserve the issue for appeal because it did not give the court the opportunity to correct the error he claimed.

Code of Civil Procedure section 663 authorizes a trial court to vacate a judgment for an "[i]ncorrect or erroneous legal basis for the decision, not consistent with or not supported by the facts . . . ." (*Id.*, subd. 1.) The statute does not authorize the court to make additional, supplemental or different findings. (*Knapp v. City of Newport Beach* (1960) 186 Cal.App.2d 669, 682; see also *Hassell v. Bird* (2016) 247 Cal.App.4th 1336, 1350 [Code Civ. Proc., § 663 cannot "be used to secure additional findings that were not made before judgment was entered"], reversed on another ground in *Hassell v. Bird* (2018) 5 Cal.5th 522, 234.)

For Matthew to have prevailed on his motion to vacate, the trial court would have had to make a finding that the March 2019 order was, in fact, below guideline. The record evidence Matthew claims supports such a conclusion is insufficient to support Code of Civil Procedure section 663 relief without a prior finding. Although a $0 support order may be below guideline, it is not manifestly below guideline as a matter of law. The guideline

16

amount is inherently factual.  Because Matthew failed to obtain a finding that the March 2019 order was below guideline, his motion to vacate did not afford the trial court the opportunity to correct the error he claims and did not preserve the issue for appeal.

### iii.　Matthew's other claims of error fail because the trial court did not enter a child support order.

Matthew argues the trial court erred in imputing to him income without an adequate basis and in failing to make the findings required when deviating from the amount of guideline support.  We find no error in this regard.  For the reasons already stated, the court properly denied Matthew's request for modification, leaving in place the child support terms of the stipulated March 2019 order.  Because it did not make any new order for child support, the court was not required to, and did not, make any calculation of Matthew's income; likewise, it was not required to, and did not, make the findings required for a child support order that deviates from the guideline amount.

## 2.　Sanctions Orders

### a.　Standard of review

A sanctions order under section 271 is reviewed for abuse of discretion.  (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 995.)  Accordingly, we will overturn such an order only if " 'no judge could reasonably make [it.]' " (*Ibid.*)  It is an abuse of discretion to rely upon improper factors in reaching a decision.  (*In re Marriage of Loyd* (2003) 106 Cal.App.4th 754, 761; see also *People v. Whitaker* (2013) 213 Cal.App.4th 999, 1008 ["Generally, a trial court abuses its discretion by basing a discretionary decision on improper factors."].)  This includes relying on findings unsupported by the record.  (*Pasco, supra,*

17

42 Cal.App.5th at p. 590.)  Likewise, a court abuses its discretion by failing to consider relevant factors.  (*Oldham v. California Capital Fund, Inc.* (2003) 109 Cal.App.4th 421, 430.)  We review any findings of fact that formed the basis for the award for substantial evidence.  (*In re Marriage of Falcone & Fyke*, at p. 995.)

### b.    Applicable law

Section 271 provides "the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys."  (*Id.,* subd. (a).)  Awards under section 271 are appropriate to address "obstreperous conduct which frustrated the policy of the law in favor of settlement, and caused the costs of the litigation to greatly increase."  (*In re Marriage of Daniels* (1993) 19 Cal.App.4th 1102, 1106.)  The statute is aimed at conduct which " 'has unreasonably increased the cost of litigation.' "  (*In re Marriage of Blake & Langer* (2022) 85 Cal.App.5th 300, 310.)

An award under section 271 is "in the nature of a sanction." (*Id.,* subd. (a).)  Unlike some other sanctions statutes, section 271 does not require a showing of malintent or bad faith.  (Compare § 271, subd. (a), with Code Civ. Proc., § 128.5, subd. (a) [providing for sanctions for "bad faith" conduct that is "frivolous or solely intended to cause unnecessary delay"]; see also *In re Marriage of Melone* (1987) 193 Cal.App.3d 757, 764 [no bad faith requirement], superseded by statute as stated in *In re Marriage of Daniels, supra*, 19 Cal.App.4th at p. 1108; *In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1318 [§ 271 contains no

18

frivolity or purpose of delay requirement].) It is sufficient that the party's conduct frustrated the policies favoring settlement or cooperation in the litigation process. It is not sanctionable merely to engage in aggressive litigation conduct or to take a position that is unsuccessful. Public policy does not prohibit zealous advocacy. It is only when the conduct becomes unreasonable that sanctions may be awarded. (See *In re Marriage of Quay* (1993) 18 Cal.App.4th 961, 970; *In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1227 (*Corona*) ["sanctions under [§] 271 are justified when a party has *unreasonably* increased the cost of litigation" (italics added)].)

In determining the amount of a sanction award, the trial court must consider "all evidence concerning the parties' incomes, assets, and liabilities." (§ 271, subd. (a).) The party requesting the award need not "demonstrate any financial need for the award." (*Ibid*.) However, the court may not "impose[] an unreasonable financial burden" on the sanctioned party. (*Ibid*.)

### c.    Analysis

Matthew argues the trial court erred in awarding $33,873.75 in sanctions to Janey.[7] He also argues it erred in denying him $20,000 in sanctions he requested against Janey. For the reasons that follow, we agree the sanction award against

---

[7]    He does not dispute the trial court's award of sanctions for $4,218.95 of attorney fees Janey incurred when Matthew refused to cooperate in getting K.P. a COVID-19 test before a planned trip to Hawaii with Janey. This amount shall not be revisited on remand but, to the extent the court orders other sanctions against Matthew, it should be considered in connection with the determination of whether the aggregate award "imposes an unreasonable financial burden" on Matthew. (§ 271, subd. (a).)

Matthew was error but do not find error in the trial court's decision not to sanction Janey.

Even though tying its award to specific attorney fees was not required (*Sagonowsky v. Kekoa* (2016) 6 Cal.App.5th 1142, 1155 [§ 271 sanctions requestor "need not establish with great precision an amount directly caused by the improper conduct"]), the trial court explained the sanctions against Matthew were for "fees associated with the motion to vacate the August 20, 2020 child support order (where [Matthew] pursued competing legal theories and took an appeal while the motion to vacate was still pending), and . . . for the cost of preparing [Janey's] request for order for the Section 271 fees." The fees for the motion to vacate amounted to $24,643.75, and the fees for the sanctions request amounted to $9,230. The court based its award on detailed factual findings and "additional context [Janey] described in her declaration and moving papers . . . ."

The trial court denied Matthew's request for sanctions against Janey without reference to any specific findings, concluding only that Matthew "failed to meet his burden that such fees are appropriate."

Matthew makes several arguments as to why the trial court erred in awarding Janey sanctions and contends Janey's conduct was manifestly sanctionable under section 271. Some of his arguments compel the conclusion that remand is necessary for reconsideration of the fee award against Matthew in accordance with this opinion.

We need not address Matthew's points that are not well taken. For example, we reject his argument that there was inadequate evidence of the parties' respective financial situations to support the sanctions order because the information before the

20

court at the time of the hearing was not current. The court was entitled to rely on historical income and expense information in setting amount of award. (See *Corona*, *supra*, 172 Cal.App.4th at p. 1227.) If Matthew wished to update his income and expense declaration to show a reduced ability to pay, he had the right to do so. His decision not to cannot form the basis for error. (*Ibid*.) And, contrary to Matthew's claim, the court did not sanction him for losing his request to modify the March 2019 order.

Finally, we do not believe Matthew has shown the trial court abused its discretion in denying his request for fees against Janey. While Matthew raises valid concerns about Janey seeking fees for conduct that was the subject of prior waivers, his argument on appeal is merely that "[her] conduct was *sanctionable*." (Italics added.) That is not an adequate argument to demonstrate an abuse of discretion. Trial courts have broad discretion in determining whether to sanction under section 271. (*In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 122.) That the trial court *could have* sanctioned Janey does not mean that it *had to*, or that no judge could reasonably decline to sanction her.

That said, we do find error in the trial court's sanction order against Matthew. First, certain findings the court relied upon in ordering sanctions are contrary to the record. Second, the court impermissibly considered Matthew's conduct during a period for which the parties had already resolved the issue of fees.

The trial court's findings that are contrary to the record include that Matthew failed to notify the court of the necessity of having his motion to vacate heard within the period prescribed under Code of Civil Procedure section 663a, subdivision (b)—that

21

he "attempt[ed] to raise the timeliness argument only <u>after</u> the October 22, 2020 hearing"; that he appealed denial of his modification request "while the motion to vacate was still pending"; and that noticing an intention to take live testimony at the February 8, 2021 hearing was somehow inappropriate.

Matthew did raise the issue of timeliness before the October 2020 hearing. In fact, the reason the hearing was held on October 2020 was so that Matthew's motion could be heard within the statutory period. He stated this explicitly three times in his ex parte motion requesting the hearing.

Further, Matthew's November 20, 2020 notice of appeal was not filed while his motion to vacate was still pending. As the trial court determined on February 8, 2021, it had been denied by operation of law on November 18, 2020. (See *Garibotti v. Hinkle* (2015) 243 Cal.App.4th 470, 483 [failure to rule on Code Civ. Proc., § 663 motion within statutory period results in denial as a matter of law].) Matthew advised the trial court of this fact in his November 19, 2020 motion for clarification. But instead of acknowledging this and taking the motion to vacate off calendar, the trial court said it "ha[d] not made a final determination as to motion to vacate" and the hearing would go forward on February 8, 2021. If Matthew had waited until after the February 2021 hearing to file his notice of appeal, he risked rendering his appeal untimely.

By the same token, there was nothing unreasonable in Matthew preparing for the February 8, 2021 hearing on his motion to vacate as if it was going forward, despite having treated it as having already been denied in filing his notice of appeal. The trial court, even after Matthew informed it that it lost jurisdiction to consider the motion to vacate on November 18,

2020, maintained that it would hear the matter on February 8. Under the circumstances, it was entirely reasonable for Matthew to prepare for the February 8 hearing, including by filing appropriate notices with respect to the conduct of that hearing.

We acknowledge here, as discussed above, that the motion to vacate was an improper vehicle for challenging the denial of Matthew's support modification request. But it was not so facially unmeritorious that the trial court dismissed it out of hand. Indeed, the court stated that it was inclined to revisit its denial of Matthew's request for modification, apparently considering the possibility that the March 2020 order was below guideline as a matter of law. On remand, the court should consider the reasonableness of Matthew's motion in the first instance. (See *In re Marriage of Abrams* (2003) 105 Cal.App.4th 979, 991 [reversing § 271 sanctions order where underlying litigation conduct "was not so devoid of merit that no reasonable person would have pursued it" and noting statements by judge at a prior hearing tending to support theory].)

The trial court also abused its discretion in considering conduct that was the subject of prior settlements in deciding to sanction Matthew. The court found, based on stipulations dated October 17, 2016 and March 13, 2019, that "fees resulting from conduct from those time periods cannot serve as the basis for future Section 271 fees." Yet the court went on to find that it could "consider the conduct covered by the March 13, 2019 stipulation in determining whether such fees are appropriate." To say that an award may result from "consider[ing]" presettlement conduct is effectively providing an award on account of that conduct. The parties stipulated that they would not recover fees on account of certain conduct occurring prior to

23

March 2019. To circumvent this agreement is to undermine the policy in favor of settlement—the very policy section 271 is intended to promote. On remand, the trial court should not consider conduct as to which the parties waived any fee recovery in deciding whether to award sanctions against Matthew.

Because we vacate the trial court's award of $33,873.75 in sanctions against him, we need not consider Matthew's arguments that the award "impose[d] an unreasonable financial burden" on him within the meaning of section 271.

## DISPOSITION

The order denying Matthew's request for modification of the March 2019 stipulated child support order is affirmed (case No. B309231). The sanctions order (case No. B317198) is reversed to the limited extent of the $33,873.75 portion of the award against Matthew he challenges on appeal. The sanctions order is affirmed in all other respects. The matter is remanded to the trial court for reconsideration of Janey's request for sanctions against Matthew subject to the limitations imposed by this opinion. The parties shall bear their own costs on appeal.


GRIMES, Acting P. J.


WE CONCUR:


WILEY, J.


VIRAMONTES, J.

24